**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

      Plaintiff,

    v.

STATE OF NEW YORK; BOARD OF
TRUSTEES OF THE STATE
UNIVERSITY OF NEW YORK; BOARD
OF TRUSTEES OF THE CITY
UNIVERSITY OF NEW YORK; NEW
YORK HIGHER EDUCATION
SERVICES CORPORATION; and DORIS
B. GONZÁLEZ, in her official capacity as
Acting President of the New York Higher
Education Services Corporation,

      Defendants.

Civil No.  1:26-cv-1527 (ECC/PJE)

---

## COMPLAINT

Plaintiff, the United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief, and alleges as follows:

### INTRODUCTION

1. Federal law prohibits illegal aliens from being eligible to receive post-secondary education benefits based on residence within a state if such benefits are denied to U.S. citizens residing in other states. *See* 8 U.S.C. § 1623(a). There are no exceptions. Yet, New York has ignored this law for years.

2. New York allows eligible illegal alien students who are living in New York to access in-state tuition, while denying access to U.S. citizens from other states. *See* N.Y. Educ. Law § 355(2)(h)(8) (allowing in-state tuition for illegal aliens at the State University of New York ("SUNY")); N.Y. Educ. Law § 6206(7)(a-1) (allowing in-state tuition for illegal aliens at the City University of New York ("CUNY")).

3. New York also allows eligible illegal alien students living in New York to receive in-state financial aid, while denying access to that financial aid to U.S. citizens from other states.

This includes state awards and loans for undergraduate and graduate programs governed by the New York Higher Education Services Corporation, N.Y. Educ. Law § 661(5), and access to financial aid to attend community college. *Id.* § 6305(8-a).

4. These statutes constitute blatant unequal treatment favoring illegal aliens over U.S. citizens. Worse, such preferential treatment is squarely prohibited and preempted by federal law mandating that "an alien who is not lawfully present in the United States *shall not* be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a) (emphasis added). Accordingly, under the Supremacy Clause of the Constitution, N.Y. Educ. Law §§ 355(2)(h)(8), 661(5)(ii), 6206(7)(a-1), and 6305(8-a) are unconstitutional by extending eligibility for post-secondary education benefits to illegal aliens and must yield to federal law.

5. Courts have consistently recognized 8 U.S.C. § 1623's preemptive effect. *See, e.g., Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304, 313 (5th Cir. 2023) (holding that Section 1623 "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same. No matter what a state says, if a state did not make U.S. citizens eligible, illegal aliens cannot be eligible"); *Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585, 606 (E.D. Va. 2004) (stating that under Section 1623(a), "public post-secondary institutions need not admit illegal aliens at all, but if they do, these aliens cannot receive in-state tuition unless out-of-state United States citizens receive this benefit"); *Foss v. Ariz. Bd. of Regents*, No. 1 CA-CV 18-0781, 2019 WL 5801690, at *8 (Ariz. Ct. App. Nov. 7, 2019) ("Section 1623 is directed at institutional practices, curtailing the authority of educational institutions to grant in-state tuition benefits to undocumented aliens. . . .").

6. Numerous courts have struck down in-state tuition laws similar to New York's as unconstitutional based on 8 U.S.C. § 1623's preemptive effect. *See, e.g.*, *United States v. Illinois*, No. 25-CV-1691, 2026 WL 2137256, at *8–11 (S.D. Ill. July 24, 2026) (finding Illinois in-state tuition statutes as applied to illegal aliens expressly preempted by Section 1623(a)); *United States*

2

*v. Nebraska*, --- F.Supp.3d ---, No. 8:26-CV-172, 2026 WL 1584862 \*27 (D. Neb. June 3, 2026) (holding Nebraska laws were preempted by Section 1623(a) because "they allow aliens unlawfully present in the United States to qualify as 'residents' of Nebraska for the purpose of post-secondary education benefits but deny such benefits to United States citizens of other states'");*United States v. Oklahoma*, No. 6:25-CV-00265, ECF No. 23 at 1 (E.D. Okla. Aug. 29, 2025) (Order and Final Consent Judgment) (holding that challenged Oklahoma in-state tuition laws "as applied to aliens who are not lawfully present in the United States, violates the Supremacy Clause and are unconstitutional and invalid"); *United States v. Texas*, No. 7:25-CV-00055, 2025 WL 1583869, at \*1 (N.D. Tex. June 4, 2025) (permanently enjoining Texas defendants from enforcing Texas Education Code §§ 54.051(m) and 54.052(a) because the challenged provisions violated the Supremacy Clause).  This Court should do the same.

## JURISDICTION AND VENUE

7.      The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

8.      Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to this Complaint arose from events occurring within this judicial district.

9.      The Court has the authority to provide the relief requested under the Supremacy Clause, U.S. Const. art. VI, cl. 2; 28 U.S.C. §§ 1651, 2201, and 2202; and the Court's inherent equitable powers.

## PARTIES

10.      Plaintiff, the United States of America, regulates immigration under its inherent, constitutional, and statutory authorities. Plaintiff enforces federal immigration laws through its Executive agencies, including the Department of Justice, Department of Homeland Security ("DHS"), and DHS component agencies, U.S. Immigration and Customs Enforcement, U.S. Citizenship and Immigration Services, and U.S. Customs and Border Protection.

11.     Defendant the State of New York is a state of the United States.

12.     Defendant the Board of Trustees of the State University of New York ("SUNY Board") was established by N.Y. Educ. Law § 353 to govern and administer SUNY, and the Board and is charged with determining university tuition under N.Y. Educ. Law § 355.

13.     Defendant the Board of Trustees of the City University of New York (the "CUNY Board") was established by N.Y. Educ. Law § 6204 to govern and administer CUNY, and the Board and is charged with determining university tuition under N.Y. Educ. Law § 6206.

14.     Defendant New York Higher Education Services Corporation ("NYHESC") exists to "improve the post-secondary educational opportunities of eligible students through the centralized administration of New York state financial aid and loan programs," and to coordinate and support student financial aid and loan programs with levels of government including the federal government. N.Y. Educ. Law § 652(2)(a).

15.     Defendant Doris B. González[1] in her official capacity as Acting President of the New York Higher Education Services Corporation is responsible for administering student financial aid programs under N.Y. Educ. Law § 655.[2]

## FEDERAL LAW

16.     The Constitution empowers Congress to "establish an uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," U.S. Const. art. I, § 8, cl. 3.

17.     The Constitution also vests the President of the United States with "[t]he executive Power," U.S. Const. art. II, § 1, and authorizes the President to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3, which necessarily includes his duty to take care over

---

[1] *Meet our Acting President*, NYHESC, https://hesc.ny.gov/meet-our-acting-president (last accessed July 29, 2026)

[2] Collectively, all of the defendants are referred herein as "New York" or "New York defendants."

immigration matters.

18.    The United States has inherent, well-established, preeminent, and preemptive authority to regulate immigration matters. This authority derives from its inherent obligations as a sovereign, the Constitution, and numerous acts of Congress. *See, e.g.*, *Fong Yue Ting v. United States*, 149 U.S. 698, 711 (1893) ("The right to exclude or to expel all aliens, or any class of aliens, absolutely or upon certain conditions, in war or in peace, [is] an inherent and inalienable right of every sovereign and independent nation, essential to its safety, its independence, and its welfare . . . ."); *Ping v. United States*, 130 U.S. 581, 603–04 (1889) ("Jurisdiction over its own territory to that extent is an incident of every independent nation. It is a part of its independence. If it could not exclude aliens it would be to that extent subject to the control of another power."); *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950) ("The exclusion of aliens is a fundamental act of sovereignty. The right to do so stems not alone from legislative power but is inherent in the executive power to control the foreign affairs of the nation. When Congress prescribes a procedure concerning the admissibility of aliens, it is not dealing alone with a legislative power. It is implementing an inherent executive power.").

19.    Based on its enumerated constitutional and sovereign powers to control and conduct relations with foreign nations, the Federal Government has broad authority to establish immigration laws. *See Fiallo v. Bell*, 430 U.S. 787, 798 (1977) (explaining that matters of immigration concern "policy questions entrusted exclusively to the political branches of our Government," leaving "no judicial authority" for courts "to substitute [their] political judgment for that of the Congress").

20.    In 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA") and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). *See* PRWORA, Pub. L. No. 104-193, 110 Stat. 2268 (1996);

IIRIRA, Pub. L. No. 104-208, Div. C, 110 Stat. 3009-546 (1996). Those Acts sought to encourage self-sufficiency among immigrants, limit their dependence on public assistance, and prevent public benefits from serving as an incentive for illegal immigration. *See id*.; *see also* 8 U.S.C. § 1601(1) ("Self-sufficiency has been a basic principle of United States immigration law since this country's earliest immigration statutes.").

21.     Congress declared that "aliens within the Nation's borders [should] not depend on public resources to meet their needs, but rather rely on their own capabilities and the resources of their families, their sponsors, and private organizations." *Id*. § 1601(2)(A).

22.     Congress also emphasized that "the availability of public benefits [should] not constitute an incentive for immigration to the United States." *Id.* § 1601(2)(B).

23.     Moreover, Congress determined that "[i]t is a compelling government interest to enact new rules for eligibility and sponsorship agreements in order to assure that aliens be self-reliant in accordance with national immigration policy" and "to remove the incentive for illegal immigration provided by the availability of public benefits." *Id.* § 1601(5)-(6).

24.     Accordingly, a state may not offer in-state tuition (or "resident tuition") benefits to illegal aliens present in the United States based on their residence in the state, if those same benefits are denied to American citizens from other states.  *See id.* § 1623(a). IIRIRA included a clear "[l]imitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits." *Id*.

25.     Section 1623(a) provides that:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

*Id*. § 1623(a).

26. Accordingly, under 8 U.S.C. § 1623(a), illegal aliens present in the United States are not eligible for postsecondary education benefits based on state residency unless those same benefits are also offered to all American citizens, regardless of their state of residence.

27. On February 19, 2025, President Trump issued Executive Order 14218, *Ending Taxpayer Subsidization of Open Borders*,[3] ordering Federal Departments and Agencies to "ensure, to the maximum extent permitted by law, that no taxpayer-funded benefits go to unqualified aliens." *Id*. § 2(a).

28. On April 28, 2025, President Trump issued Executive Order 14287, *Protecting American Communities From Criminal Aliens*,[4] directing relevant officials to ensure the "[e]qual [t]reatment of Americans" and to "take appropriate action to stop the enforcement of State and local laws, regulations, policies, and practices favoring aliens over any groups of American citizens that are unlawful, preempted by Federal law, or otherwise unenforceable, including State laws that provide in-State higher education tuition to aliens but not to out-of-State American citizens." *Id*. § 5.

29. These Executive Orders emphasize that state governments must not confer greater benefits to illegal aliens present in our Nation than to U.S. citizens. They also reflect Congress's end—expressed in multiple provisions of the Immigration and Nationality Act—to reduce incentives for illegal immigration by limiting access to certain public benefits intended for U.S. citizens.

---

[3] Executive Order, *Ending Taxpayer Subsidization of Open Borders*, 90 Fed. Reg. 10581 (Feb. 19, 2025), *available at* https://www.whitehouse.gov/presidential-actions/2025/02/ending-taxpayer-subsidization-of-open-borders/.

[2] Executive Order, *Protecting American Communities From Criminal Aliens*, 90 Fed. Reg. 18761 (Apr. 28, 2025), *available at* https://www.whitehouse.gov/presidential-actions/2025/04/protecting-american-communities-from-criminal-aliens/.

**THE NEW YORK LAWS**

**I.      Resident Tuition is Available for Illegal Aliens in New York attending SUNY or CUNY**

30.      New York law rewards an illegal alien with eligibility for in-state tuition, based on residency in New York, while denying eligibility for resident tuition rates to U.S. citizens who are not New York residents. *See* N.Y. Educ. Law §§ 355(2)(h)(8), 6206(7)(a-1).[5]

31.      Since 2002, New York law has allowed illegal aliens who establish residency in New York to benefit from reduced, in-state tuition rates while denying that same benefit to U.S. citizens who are not residents. *See Id.* §§ 355(2)(h)(8), 6206(7)(a-1).

32.      New York establishes distinct resident and nonresident tuition rates within its two public higher education systems the State University of New York ("SUNY"), a statewide system of public postsecondary institutions, and the City University of New York ("CUNY"), a public postsecondary system comprising institutions located throughout New York City's five boroughs. *See id.*

33.      For example, SUNY charges $7,070 for tuition per year for in-state residents and $17,730 for out-of-state residents. [6]

34.      At CUNY, a nonresident student enrolled in the minimum twelve-credit course load is charged $7,440 in tuition per semester, more than twice the $3,465 charged to students eligible for resident tuition. [7][8]

---

[5] N.Y. Edu. Law § 6206(7)(a-1) is effective until July 1, 2027, and will be replaced by N.Y. Edu. Law § 6206(7)(a). Both laws use the same in-state tuition eligibility standards for illegal aliens.

[6]    *Tuition and Fees*, SUNY Smart Track, (last visited July 20, 2026) https://www.suny.edu/smarttrack/tuition-and-fees/.

[7] *Tuition and College Costs*, City University of New York, (last visited July 20, 2026) https://www.cuny.edu/financial-aid/tuition-and-college-costs/#undergraduate-tuition.

[8] CUNY charges eligible New York residents a tuition rate of $3,465 per semester, while nonresident students are charged $620 per credit. Based on a minimum full-time course load of twelve credits per semester, resident students pay an effective rate of approximately $288.75 per credit —less than half the per-credit rate imposed on nonresident students.

35.    N.Y. Educ. Law §§ 355(2)(h)(8) and 6206(7)(a-1) unequivocally make illegal aliens living in New York eligible to receive in-state tuition. The laws allow a nonresident student to qualify for resident tuition at SUNY or CUNY if the student:

(1)    Attended an approved *New York* high school for at least two years, graduated and applied to SUNY or CUNY within five years of graduation; or

(2)    Completed an approved *New York* general equivalency diploma ("GED") program, earned a New York State GED and applied to SUNY or CUNY within five years of completing the GED; or

(3)    Attended or enrolled in SUNY or CUNY in the fall 2001-2002 academic year and was approved to pay the resident tuition rate.

*See* N.Y. Educ. Law §§ 355(2)(h)(8) and 6206(7)(a-1) (emphasis added)

36.    Although New York law purports to require students without lawful immigration status to "apply to legalize their immigration status as soon as they are eligible to do so," N.Y. Educ. Law §§ 355(2)(h)(8) and 6206(7)(a-1), on information and belief, New York does not impose any requirement or verification mechanism to ensure compliance with that provision.

37.    Independent of N.Y. Educ. Law §§ 355(2)(h)(8) and 6206(7)(a-1), New York law conditions attendance at New York public high schools largely on residency. *See* N.Y. Educ. Law § 3202. Specifically, a student must reside within a New York school district to attend its public high school tuition-free. *Id.* Attendance at a New York high school is a criterion for in-state tuition eligibility in post-secondary New York schools.

38.    An illegal alien is eligible to receive in-state tuition in New York so long as the individual attended high school in New York for two years, graduated from a New York high school, or registered for college in New York within five years of graduation or completion of a GED program, and filed an affidavit affirming the intent to apply for legal immigration status once

eligible to do so. N.Y. Educ. Law §§ 355(2)(h)(8), 6206(7)(a-1).

39.    Accordingly, the SUNY tuition rate for illegal aliens residing in New York who satisfy criteria under N.Y. Educ. Law § 355(2)(h)(8) is the same tuition rate as other New York residents. Conversely, a U.S. citizen who is not eligible for in-state tuition under N.Y. Educ. Law §§ 355(2)(h)(8), due to residency requirements, is required to the pay higher, nonresident tuition.

40.    Likewise, the CUNY tuition rate for illegal aliens residing in New York who satisfy criteria under N.Y. Educ. Law § § 6206(7)(a-1) is the same tuition rate as other New York residents. However, a U.S. citizen who is not eligible for in-state tuition under N.Y. Educ. Law § 6206(7)(a-1), due to residency requirements, is required to the pay higher, nonresident tuition.

**II.    Financial Assistance is Available to Illegal Aliens in New York Based on Residence**

41.    New York law also rewards illegal aliens with eligibility for certain state-funded financial assistance based on residency in New York while denying eligibility for the same state-funded assistance to U.S. citizens who are not residents of New York. *See* N.Y. Educ. Law § 661(5)(a)-(b).

A.    Illegal Aliens are Eligible for Financial Assistance Based on Residence Through the NYHESC

42.    New York established the NYHESC to improve post-secondary educational opportunities of eligible students through administration, coordination, and support of state financial aid and loan programs. N.Y. Educ. Law § 652. The President of NYHESC is tasked with administering the financial aid programs and eligibility determinations. *See* N.Y. Educ. Law §§ 655, 661.

43.    NYHESC administers the Tuition Assistance Program ("TAP"), the Excelsior Scholarship,[9] and numerous loan forgiveness and grant programs established under Article 14 of

---

[9] The Excelsior Scholarship is just one example of awards administered by NYHESC, see N.Y.

the New York Education Law. Eligibility for these programs generally depends on satisfying statutory New York residency requirements. N.Y. Educ. Law art. 14; *id.* §§ 661, 669-h.

44.     N.Y. Educ. Law § 661(5)(a)-(b) deems that an "applicant without lawful immigration status shall be eligible for an award" at the undergraduate or graduate level of study if the student meets similar requirements of residency as outlined in N.Y. Educ. Law §§ 355(2)(h)(8) and 6206(7)(a-1).

45.     The NYHESC rewards illegal aliens with eligibility for financial assistance based on residency while denying that same benefit to U.S. citizens who are not residents of New York. *Id.*

B.     <u>Illegal Aliens Are Eligible for Financial Assistance Based on Residence when Attending Community Colleges in New York</u>

46.     New York Educ. Law § 6305(8-a) extends eligibility for state financial assistance to illegal aliens attending community colleges by incorporating the New York residency standard established in N.Y. Educ. Law § 661(5). Meanwhile, U.S. citizens who are not residents of New York are not eligible for such state-supported financial aid to attend community college. *See* N.Y. Educ. Law §§ 661(5), 6305(8-a).

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF THE SUPREMACY CLAUSE
### (PREEMPTION OF N.Y. EDUC. LAW § 355(2)(H)(8) –SUNY TUITION)

47.     The United States hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

48.     The Supremacy Clause of the U.S. Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof … shall be the supreme

---

Exec. Law § 669-h.

Law of the Land … any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Art. VI, cl. 2.

49.     The preemption doctrine is derived from the Supremacy Clause. Express preemption occurs when Congress includes express language within the statute indicating its preemptive intent. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000).

50.     N.Y. Educ. Law § 355(2)(h)(8) allows a nonresident student to qualify for resident tuition at SUNY if the student:

(1)     Attended an approved *New York* high school for at least two years, graduated and applied to SUNY within five years of graduation; or

(2)     Completed an approved *New York* GED program, earned a New York State GED, and applied to SUNY within five years of completing the GED; or

(3)     Attended or enrolled in SUNY in the fall 2001-2002 academic year and was approved to pay the resident tuition rate.

*See* N.Y. Educ. Law § 355(2)(h)(8) (emphasis added).

51.     N.Y. Educ. Law § 355(2)(h)(8) extends eligibility for in-state tuition benefits to illegal aliens at SUNY contrary to Congress's prohibition on providing eligibility for postsecondary education benefits (lower, resident tuition rates) to illegal aliens residing in New York that are not available to all U.S. citizens regardless of residency. *See* 8 U.S.C. § 1623(a).

52.     Accordingly, the challenged provision, N.Y. Educ. Law § 355(2)(h)(8), is preempted and unconstitutional.

**COUNT II**
**VIOLATION OF THE SUPREMACY CLAUSE**
**(PREEMPTION OF N.Y. EDUC. LAW § 6206(7)(a-1) – CUNY TUITION)**

53.     The United States hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

12

54.    N.Y. Educ. Law § 6206(7)(a-1)[10] allows a nonresident student to qualify for resident tuition at CUNY if the student:

(1) Attended an approved *New York* high school for at least two years, graduated and applied to CUNY within five years of graduation; or

(2) Completed an approved *New York* GED program, earned a New York State GED, and applied to CUNY within five years of completing the GED; or

(3) Attended or enrolled in CUNY in the fall 2001-2002 academic year and was approved to pay the resident tuition rate.

*See* N.Y. Educ. Law § 6206(7)(a-1) (emphasis added).

55.    N.Y. Educ. Law § 6206(7)(a-1), and its successor § 6206(7)(a), extend eligibility for in-state tuition benefits to illegal aliens at CUNY contrary to Congress's prohibition on providing eligibility for postsecondary education benefits to illegal aliens residing in New York that are not available to all U.S. citizens regardless of residency. *See* 8 U.S.C. § 1623(a).

56.    Accordingly, the challenged provision, N.Y. Educ. Law § 6206(7)(a-1), and its successor § 6206(7)(a), are preempted and unconstitutional.

## COUNT III
### VIOLATION OF THE SUPREMACY CLAUSE
### (PREEMPTION OF N.Y. EDUC. LAW § 661(5)(ii) – UNDERGRADUATE OR GRADUATE FINANCIAL AID)

57.    Plaintiff hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

58.    N.Y. Educ. Law § 661(5)(a)-(b) deems that an "applicant without lawful immigration status shall be eligible for an award" at the undergradute or graduate level of study if the student meets similar requirements of residency as outlined in N.Y. Educ. Law §§

---

[10] N.Y. Edu. Law § 6206(7)(a), effective July 1, 2027, uses the same qualification standards as § 6206(7)(a-1).

355(2)(h)(8) and 6206(7)(a-1).

59.     N.Y. Educ. Law § 661(5) extends eligibility for state supported financial aid and postsecondary education benefits to illegal aliens, contrary to Congress's prohibition on providing eligibility for postsecondary education benefits to illegal aliens residing in New York that are not available to all U.S. citizens regardless of residency. *See* 8 U.S.C. § 1623(a).

60.     Accordingly, the challenged provision, N.Y. Educ. Law § 661(5), is preempted and unconstitutional.

**COUNT IV**
**VIOLATION OF THE SUPREMACY CLAUSE**
**(PREEMPTION OF N.Y. EDUC. LAW § 6305(8-A) – COMMUNITY COLLEGE FINANCIAL AID)**

61.     Plaintiff hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

62.     New York Edu Law § 6305(8-a) extends eligibility for state financial assistance to illegal aliens attending community colleges by incorporating the New York residency standard established in N.Y. Educ. Law § 661(5). Yet, U.S. citizens who are not residents of New York are not eligible for such state-supported financial aid to attend community college. *See* N.Y. Educ. Law §§ 661(5), 6305(8-a)

63.     N.Y. Educ. Law § 6305(8-a) extends eligibility for state supported financial aid and postsecondary education benefits to illegal aliens, contrary to Congress's prohibition on providing eligibility for postsecondary education benefits to illegal aliens residing in New York that are not available to all U.S. citizens regardless of residency. *See* 8 U.S.C. § 1623(a).

64.     Accordingly, the challenged provision, N.Y. Educ. Law § 6305(8-a) is preempted and unconstitutional.

**PRAYER FOR RELIEF**

WHEREFORE, the United States respectfully requests the following relief:

14

1. That this Court enter a judgment declaring N.Y. Educ. Law § 355(2)(h)(8) violates the Supremacy Clause because it extends State and local public benefits to New York resident illegal aliens but not nonresident U.S. citizens through State law and is therefore unconstitutional and preempted;

2. That this Court enter a judgment declaring N.Y. Educ. Law § 661(5) violates the Supremacy Clause because it extends State and local public benefits to New York resident illegal aliens but not nonresident U.S. citizens through State law and is therefore unconstitutional and preempted;

3. That this Court enter a judgment declaring N.Y. Educ. Law § 6206(7)(a-1) and its successor § 6202(7)(a) violate the Supremacy Clause because they extend State and local public benefits to New York resident illegal aliens but not nonresident U.S. citizens through State law and are therefore unconstitutional and preempted;

4. That this Court enter a judgment declaring N.Y. Educ. Law § 6305(8-a) violates the Supremacy Clause because it extends State and local public benefits to New York resident illegal aliens but not nonresident U.S. citizens through State law and is therefore unconstitutional and preempted;

5. That this Court issue a permanent injunction that prohibits Defendants as well as their successors, agents, and employees, from enforcing N.Y. Educ. Law § 355(2)(h)(8), or any similar subsequent statute, because it extends State and local public benefits to New York resident illegal aliens but not nonresident U.S. citizens through State law;

6. That this Court issue a permanent injunction that prohibits Defendants as well as their successors, agents, Boards, and employees, from enforcing N.Y. Educ. Law § 661(5), or any similar subsequent statute, because it extends State and local public benefits to New York resident illegal aliens but not nonresident U.S. citizens through State law;

15

7.     That this Court issue a permanent injunction that prohibits Defendants as well as their successors, agents, Boards, and employees, from enforcing N.Y. Educ. Law § 6206(7)(a-1) and its successor § 6202(7)(a), or any similar subsequent statute, because they extend State and local public benefits to New York resident illegal aliens but not nonresident U.S. citizens through State law;

8.     That this Court issue a permanent injunction that prohibits Defendants as well as their successors, agents, Boards, and employees, from enforcing N.Y. Educ. Law § 6305(8-a), or any similar subsequent statute, because it extends State and local public benefits to New York resident illegal aliens but not nonresident U.S. citizens through State law;

9.     That this Court award the United States its costs and fees in this action; and

10.    That this Court award any other relief it deems just and proper.


DATED: August 10, 2026                         Respectfully Submitted

                                               STANLEY E. WOODWARD, JR.
                                               Associate Attorney General

                                               BRETT A. SHUMATE
                                               Assistant Attorney General
                                               Civil Division

                                               JOHN A. SARCONE III
                                               First Assistant United States Attorney
                                               Northern District of New York

                                               JACQUELINE COLEMAN SNEAD
                                               Deputy Director

                                               *s/ Brandon D. Neuman*
                                               Brandon D. Neuman
                                               Trial Attorney
                                               NDNY Bar Roll # 707748


16

U.S. Department of Justice
Civil Division
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, DC 20044
(202) 227-7416
Brandon.Neuman@usdoj.gov

*Attorneys for the United States*