**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

Plaintiff,

1:26-cv-1527 (ECC/PJE)

v.

STATE OF NEW YORK; BOARD OF TRUSTEES OF THE STATE UNIVERSITY OF NEW YORK; BOARD OF TRUSTEES OF THE CITY UNIVERSITY OF NEW YORK; NEW YORK HIGHER EDUCATION SERVICES CORPORATION; and DORIS B. GONZÁLEZ, in her official capacity as Acting President of the New York Higher Education Services Corporation,

Defendants.

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

---

## INTRODUCTION

In 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA") and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). *See* PRWORA, Pub. L. No. 104-193, 110 Stat. 2105, 2268 (1996); IIRIRA, Pub. L. No. 104-208, Div. C, § 505, 110 Stat. 3009-546, 3009-672 (1996). Those Acts sought to encourage self-sufficiency among immigrants, limit their dependence on public assistance, and prevent public benefits from serving as an incentive for illegal immigration. Section 505(a) of IIRIRA (codified at 8 U.S.C. § 1623(a)) ("Section 1623(a)") provides that "an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident."

The President last year reaffirmed that federal objective through two Executive Orders,[1] one expressly directing federal officials to "take appropriate action to stop the enforcement of State and local laws . . . favoring aliens over any groups of American citizens . . . including State laws that provide in-State higher education tuition to aliens but not to out-of-State American citizens . . . ." Exec. Order No. 14287, § 5.

New York has frustrated that federal aim through state laws that do precisely what Section 1623(a) prohibits. New York allows eligible illegal alien students who live in New

[1] Exec. Order No. 14218, 90 Fed. Reg. 10581 (Feb. 19, 2025); Exec. Order No. 14287, 90 Fed. Reg. 18761 (Apr. 28, 2025); Complaint, *United States v. New York*, No. 1:26-cv-01527 (ECC/PJE) (N.D.N.Y. Aug. 10, 2026), ECF No. 1 ("Compl.")

York to receive in-state tuition at the State University of New York ("SUNY") and the City University of New York ("CUNY") and in-state financial aid, while denying those benefits to nonresident U.S. citizens generally. *See* N.Y. Educ. Law §§ 355(2)(h)(8), 6206(7)(a-1), 661(5), 6305(8-a). Those laws violate Section 1623(a), and the United States brought this action to enforce that federal limit.

The Complaint pleads a cognizable sovereign injury, so the United States has standing. Defendants' contrived reading of "on the basis of residence" cannot be squared with the fact that New York confers on its resident illegal aliens a benefit it denies to citizens who live elsewhere, and a handful of hypothetical exceptions does not make those citizens eligible "without regard to" residence. The decisions Defendants cite, and the Eastern District of Virginia's recent decision in *United States v. Virginia*, are non-binding, were wrongly decided, and are distinguishable. Finally, Section 1623(a) regulates aliens, not States, so the Tenth Amendment is not implicated. The Court should deny the motion to dismiss.

## BACKGROUND

### I. Supremacy Clause & Immigration Power

Immigration is an enumerated power of the Federal Government and thus not reserved to the states: "The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012). Indeed, it "is a routine and normally legitimate part of the business of the Federal Government to classify on the basis of alien status, and to take into account the character of the relationship between the alien and this country," while

"only rarely are such matters relevant to legislation by a State." *Plyler v. Doe*, 457 U.S. 202, 225 (1982) (internal quotation marks omitted) (citations omitted).

Although the Supremacy Clause provides that federal law trumps state law when the two conflict, the Tenth Amendment provides a check on federal power in that Congress lacks "the power to issue orders directly to the States." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 470 (2018).

**II. 8 U.S.C. § 1623**

Congress enacted PRWORA and IIRIRA as complementary measures directed at reducing incentives for unlawful immigration and limiting access to public benefits by aliens who are not lawfully present. *See* 8 U.S.C. § 1601(2), (6). As relevant here, § 1621 establishes the baseline rules governing eligibility for state and local public benefits, including when States may extend such benefits to unlawfully present aliens. Section 1623 then imposes a specific limitation on postsecondary education benefits, prohibiting States from making unlawfully present aliens eligible on the basis of residence unless U.S. citizens receive equivalent eligibility without regard to residence. 8 U.S.C. §§ 1621, 1623 (a).

**III. The Challenged New York Statutes**

Like many states, New York charges substantially lower tuition rates to students eligible for the resident rate at its public postsecondary institutions. SUNY charges $7,070 annually for resident tuition and $17,730 for nonresident tuition, while CUNY charges full-time nonresidents $7,440 per semester, compared with $3,465 for students eligible for the resident rate. Compl. ¶¶ 32–34 & nn.6–8. New York law extends the resident tuition

rate to certain students who attended a New York high school for at least two years and either graduated from that school or obtained a New York GED, provided they apply for admission within five years of graduation or receipt of the GED. N.Y. Educ. Law §§ 355(2)(h)(8), 6206(7)(a-1); MTD at 4–5; Compl. ¶¶ 35, 50, 54. Students without lawful immigration status must also file an affidavit stating that they have applied, or will apply when eligible, to legalize their immigration status. N.Y. Educ. Law § 355(2)(h)(8).

New York extends in-state financial-aid eligibility on substantially the same terms. Applicants who qualify for the resident tuition rate under the New York high-school or GED criteria described above are likewise eligible for state financial aid. MTD at 6; Compl. ¶¶ 41–46. Defendants acknowledge that "HESC awards are available to everyone who receives the resident tuition rate at SUNY or CUNY for any reason." MTD at 6. The same criteria govern financial aid for community-college students. N.Y. Educ. Law § 6305(8-a). Collectively, these provisions are the "Challenged Laws."

**IV. Procedural History**

The United States filed its Complaint on August 10, 2026, alleging that the Challenged Laws are preempted by 8 U.S.C. § 1623(a) and seeking declaratory and injunctive relief. Compl. ¶¶ 47–64 & Prayer for Relief. Defendants moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on September 30, 2026. MTD.[2] The United States now opposes the motion.

[2] Citations to the MTD are to the memorandum's internal page numbers, which run six pages behind the CM/ECF page numbers (for example, MTD at 14 is ECF page 20).

## STANDARD OF REVIEW

A claim is properly dismissed under Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (cleaned up). The party invoking federal jurisdiction bears the burden of establishing it, *see Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000), and Rule 12(b)(1) is the proper vehicle for a standing challenge. Defendants' standing challenge rests on the face of the Complaint. *See* MTD at 10–11. Where, as here, a Rule 12(b)(1) challenge rests on the face of the complaint, the Court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In applying that standard, the Court must "consider the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Boswell v. Bimbo Bakeries USA, Inc.*, 570 F. Supp. 3d 89, 93 (S.D.N.Y. 2021) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original).

## ARGUMENT

### I. The United States Has Standing to Defend Its Sovereign Interests.

The United States has sufficiently pled an injury traceable to the Challenged Laws. It has alleged harm to its sovereign interests in reducing the incentives for illegal immigration and in ensuring that U.S. citizens and nationals receive equal treatment with

such aliens, and it has alleged that the Challenged Laws provide benefits contrary to those interests. Compl. ¶¶ 4, 22–23, 27–29. A judicial decision invalidating and enjoining the Challenged Laws will redress that injury. Defendants' contrary arguments, MTD at 8–11, fail.

To demonstrate standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). At the dismissal stage, general factual allegations of injury suffice. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). The Complaint satisfies each element.

The United States has suffered an injury in fact because it "has a legally protected interest in enforcing federal law." *United States v. Missouri*, 114 F.4th 980, 984–85 (8th Cir. 2024), *cert. denied*, 146 S. Ct. 90 (2025). Although the Supremacy Clause does not itself create a cause of action, there is an equitable tradition of suits to enjoin unconstitutional actions by state actors. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326–27 (2015); *see also Safe Sts. All. v. Hickenlooper*, 859 F.3d 865, 898 (10th Cir. 2017) ("The Supreme Court has reaffirmed time and again that the United States is empowered to enforce the supremacy of federal law against preempted State action, and that it may obtain an injunction to that effect.").

The Federal Government has cognizable "sovereign interests" in its "power to create and enforce a legal code, both civil and criminal." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601 (1982). It suffers sovereign harm when a state legislates in violation of federal law and the Supremacy Clause. *See Vt. Agency of*

*Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000); *Missouri*, 114 F.4th at 985 ("Interference with the federal government's interest in enforcing federal law is sufficient to establish that the Act's implementation injured the United States."); *United States v. Alabama*, 691 F.3d 1269, 1301 (11th Cir. 2012) ("The United States suffers injury when its valid laws in a domain of federal authority are undermined by impermissible state regulations.").

Defendants erroneously argue that the Complaint is "devoid of any identified harm or injury in fact" and that this suit is "borne out of a policy objection, not any actual or actionable harm." MTD at 10–11. The Complaint pleads "Congress's end—expressed in multiple provisions of the Immigration and Nationality Act—to reduce incentives for illegal immigration by limiting access to certain public benefits intended for U.S. citizens." Compl. ¶ 29. And it alleges that the President has directed federal officials to "ensure, to the maximum extent permitted by law, that no taxpayer-funded benefits go to unqualified aliens" and to "take appropriate action to stop the enforcement of State and local laws, regulations, policies, and practices favoring aliens over any groups of American citizens . . . including State laws that provide in-State higher education tuition to aliens but not to out-of-State American citizens." Compl. ¶¶ 27–28 (citations omitted). The Challenged Laws are at odds with those interests, *see* Compl. ¶¶ 4, 30, 39–41, 51, 55, 59, 63, and the Complaint quantifies[3] the unequal treatment of U.S. citizens and identifies the criteria

[3] The Complaint does not plead unequal treatment in the abstract. It alleges the resident and nonresident tuition rates charged by SUNY and CUNY, identifies the eligibility criteria applicable to unlawfully present aliens, and alleges that nonresident U.S. citizens generally remain ineligible for the same benefits. Compl. ¶¶ 33–40, 41–46.

that exclude out-of-state citizens from the identical benefit, *id.* ¶¶ 33–35, 37–40, 44–46. That specificity distinguishes this case from a bare "preemption exists" case and satisfies the injury-in-fact criteria Defendants articulate. *See* MTD at 9–11.

Defendants also wrongly fault the Complaint for not alleging that the Challenged Laws "negatively affect international relations with any particular nation" or "attempt to control or in any way interfere with federal immigration operations." MTD at 10 (citing *United States v. Texas*, 97 F.4th 268, 295–96 (5th Cir. 2024), and *Geo Grp., Inc. v. Newsom*, 50 F.4th 745, 750 (9th Cir. 2022)). That argument demands a showing the law does not require. Those cases involved state laws alleged to interfere with foreign relations or federal operations, but nothing in them suggests that such interference is the only way a state law can injure the United States. *See Alabama*, 691 F.3d at 1301; *Missouri*, 114 F.4th at 985.

The injury is also traceable to Defendants and redressable by this Court. The Complaint alleges that the Challenged Laws are administered by Defendants, not any intervening actor, and are the direct mechanism by which illegal aliens become eligible for the benefits at issue. Compl. ¶¶ 12–15, 35, 38, 42, 44, 46. Declaratory relief and an injunction barring enforcement of the Challenged Laws would directly redress the pled injury. *Id.*, Prayer for Relief ¶¶ 1–8. Defendants' only redressability argument—that the Complaint does not allege that invalidating the laws "would redress" harm to international relations, MTD at 10—addresses a harm the United States has not asserted. The United States clearly has standing.

**II. The Challenged Laws Conflict with Section 1623(a).**

The Challenged Laws are preempted because they: (1) make an unlawfully present alien eligible for a postsecondary education benefit on the basis of residence within New York; and (2) do not make U.S. citizens or nationals eligible for that same benefit without regard to residence. *United States v. Kansas*, No. 5:26-CV-04066-HLT-BGS, 2026 WL 2654069, at *3 (D. Kan. Sept. 9, 2026). Defendants principally contend that: (1) the Challenged Laws are not based on residence because they use high-school attendance and GED criteria rather than an express residency requirement; (2) U.S. citizens are eligible for the same benefits because any citizen who satisfies those criteria may qualify; and (3) Section 1623(a) either lacks preemptive effect or must be narrowly construed to avoid constitutional concerns. Those arguments fail.

Defendants invoke the presumption against preemption on the ground that the Challenged Laws regulate education, an area of traditional state concern. MTD at 12. The presumption reflects the principle that courts should not lightly infer that Congress displaced state authority in fields historically occupied by the States absent a clear indication of congressional intent. *See id.* at 12–13. But Defendants themselves recognize that, in an express-preemption case, courts "focus first on the statutory language, which necessarily contains the best evidence of Congress' pre-emptive intent." *Id.* at 13 (quoting *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013)). Here, the text is unmistakable: Section 1623(a) applies "[n]otwithstanding any other provision of law" and speaks directly to postsecondary education benefits conferred "on the basis of residence within a State." 8 U.S.C. § 1623(a). Nor can education's status as a traditional state

concern displace that text. Classifications based on alienage are "a routine and normally legitimate part of the business of the Federal Government." *Plyler*, 457 U.S. at 225 (internal quotation marks omitted) (citations omitted).

### A. The Challenged Laws Provide Postsecondary Education Benefits on the Basis of Residence.

The United States does not dispute that “on the basis of residence” in Section 1623(a) calls for but-for causation, *see* MTD at 14, but Defendants misapply that standard. *See United States v. Texas*, 181 F.4th 548, 557 (5th Cir. 2026). But-for causation does not require that residence be the only cause: “Section 1623(a) does not limit its preemptive effect to state-law residency determinations based on a single factor.” *Id.* (“As it has in other statutes, [Congress] could have added ‘solely’ to indicate that actions taken ‘because of’ the confluence of multiple factors do not violate the law.”) (quoting *Bostock v. Clayton Cnty.*, 590 U.S. 644, 656 (2020)).

Defendants erroneously argue that the Challenged Laws look to a student’s “historical contacts” with New York rather than residence, and that “these criteria require a historical connection to New York, but they surely do not require state residency.” MTD at 13–15. New York’s own description of its scheme refutes that argument. Section 355(2)(h)(8) directs that a student who is “not a resident of New York state” shall pay tuition “at a rate or charge no greater than that imposed for students who are residents of the state” if the student satisfies the high school or GED criteria. MTD at 4. And “HESC awards are available to everyone who receives the resident tuition rate at SUNY or CUNY for any reason.” MTD at 6. In other words, New York extends a residence-based benefit—the resident rate, and the awards that follow it—to students who satisfy the high school

or GED criteria. The Complaint alleges exactly that: New York "rewards an illegal alien with eligibility for in-state tuition, based on residency in New York." Compl. ¶ 30; *see also id.* ¶¶ 2–3, 31, 35–41, 43–46.

The Complaint also alleges that New York "conditions attendance at New York public high schools largely on residency" and that "a student must reside within a New York school district to attend its public high school tuition-free." Compl. ¶ 37 That allegation is grounded in New York law, which provides that "[a] person over five and under twenty-one years of age who has not received a high school diploma is entitled to attend the public schools *maintained in the district in which such person resides* without the payment of tuition." N.Y. Educ. Law § 3202(1) (emphasis added).

Defendants' reliance on the INA's definition of "residence" is misplaced. Defendants argue that Section 1623(a)'s reference to "residence" incorporates the INA's definition of that term as a person's "principal, actual dwelling place in fact, without regard to intent," 8 U.S.C. § 1101(a)(33), and that eligibility is conferred "on the basis of residence" only when residence is the but-for cause of the benefit. MTD at 14 (quoting *United States v. Walz*, 825 F. Supp. 3d 897, 909 (D. Minn. 2026)). But Section 1623(a) concerns the basis on which a State confers a benefit, not who qualifies as a resident under federal law. *See Texas*, 181 F.4th at 556. In any event, a student who attends a New York high school for two or more years will ordinarily have maintained his or her "principal, actual dwelling place in fact" in New York during that period.

Defendants also erroneously insist that, because some nonresidents may qualify for in-state status, the Challenged Laws are "an alternative to residency, not a proxy or

subset of residency." MTD at 15–16. They proffer statutory categories (for example, military families, GI Bill students, and Olympic athletes), MTD at 3, 16, but those categories are not challenged here and say nothing about whether the tuition provisions the Complaint does challenge operate on the basis of residence. Defendants' hypotheticals, MTD at 16, fare no better. A boarding-school student's "principal, actual dwelling place in fact" is in New York, his or her "residence" under the very definition Defendants invoke. MTD at 14 (quoting 8 U.S.C. § 1101(a)(33)). A student living in a neighboring state generally could not attend a New York public high school tuition-free, because New York conditions that attendance largely on residency. Compl. ¶ 37. And a student who graduated and later moved away is eligible only because the student lived in New York while attending school there; his or her eligibility still rests on residence, just at an earlier time. These are hypotheticals, not facts, and on this motion the Court must accept the Complaint's well-pleaded allegations, not Defendants' conjecture.

### B. The Challenged Laws Do Not Provide That a United States Citizen Is Eligible for the Same Benefit Without Regard to Residence.

Defendants contend that Section 1623(a) is satisfied so long as any citizen can obtain the benefit. MTD at 17–18. Other courts have rejected that reading. *See, e.g.*, *Texas*, 181 F.4th at 559; *Illinois*, 2026 WL 2137256, at *11. Read as a whole, Section 1623(a)'s references to "an alien" and "a citizen or national" should be interpreted consistently. Nothing in the statute suggests that Congress intended the singular to encompass multiple unlawfully present aliens but only a single U.S. citizen or national.

As the Fifth Circuit recently observed, "if some U.S. citizens or nationals, regardless of residency, are ineligible for reduced in-state tuition rates, then all illegal

aliens must be ineligible to receive the same benefit based on residency. U.S. citizens or nationals must be treated no worse than illegal aliens." *Texas*, 181 F.4th at 559. That is because "Section 1623(a) is a categorical prohibition, whose reference to 'a citizen or national' naturally reads to include the plural, and contains no capacious escape hatch allowing a state to satisfy the 'unless' condition by identifying a single U.S. citizen or national somewhere who can obtain the benefit vis-à-vis a limited exception." *Id.* at 558; *Kansas*, 2026 WL 2654069, at *5 (a "single example (or even a small range of examples)" would "eviscerate the prohibition, rendering it essentially toothless").

The Challenged Laws fall within that rule. Defendants' answer is that any U.S. citizen who satisfies the same criteria may qualify. MTD at 4, 17–19. But that is the point: the criteria track residence in New York. A citizen who lives in another state and did not attend and graduate from a New York high school (or earn a New York GED) is generally not eligible for the resident rate and must pay the higher, nonresident rate, Compl. ¶¶ 39–40, while an unlawfully present alien who did so—ordinarily while living in New York—is eligible. That is not parity; it is the unequal treatment Section 1623(a) forbids. *See Texas*, 181 F.4th at 559. Eligibility that depends on a connection to New York that nonresident citizens generally lack is not eligibility "without regard to" residence.

Defendants also wrongly fault the Complaint for alleging that Section 1623(a) bars eligibility "unless those same benefits are also offered to all American citizens," a statement they call one of many "misstatements about the federal law." MTD at 17 (quoting Compl. ¶ 26). It is not a misstatement: it is the reading adopted in *Texas*, *Illinois*, and *Kansas*. Nor does *Martinez v. Regents of the University of California*, 241 P.3d 855,

870 (Cal. 2010), support a different reading. The statement Defendants quote—that "[i]t cannot be the case that states may never give a benefit to unlawful aliens without giving the same benefit to all American citizens," MTD at 17–18 (quoting *Martinez*, 50 Cal. 4th at 1300)—comes from a state supreme court, does not bind this Court on a question of federal law, and predates *Texas*, *Illinois*, and *Kansas*.

Defendants argue that the phrase "without regard to whether the citizen or national is such a resident" refers only to a citizen's current state of residence. MTD at 19 n.8. But Section 1623(a) does not distinguish between current and former residence. The phrase "such a resident" refers back to the "residence within a State" that forms the basis for the alien's eligibility. Thus, if New York makes an unlawfully-present alien eligible because of residence reflected by prior attendance at a New York high school, the statute requires that citizens be eligible without regard to that same residence-based criterion. And a citizen who is eligible only because he or she once lived in New York is eligible on the basis of residence, just residence at an earlier time.

Finally, "Congress does not ordinarily enact self-defeating statutes." *Exxon Mobil Corp. v. Corporación Cimex, S. A. (Cuba)*, 609 U.S. 108, 120 (2026). Congress would not have made illegal aliens ineligible for state postsecondary education benefits on the basis of state residence, yet restored that eligibility whenever a State extends the benefit to the few nonresident citizens with the same New York schooling. *See Illinois*, 2026 WL 2137256, at *11 ("Permitting a state to evade preemption by pointing to narrow, hypothetical exceptions of this kind would render the 'unless' clause meaningless surplusage.").

### C. Neither Defendants' Authorities Nor the *Virginia* Decision Supports Dismissal.

Defendants erroneously contend that courts "have distinguished between state laws that base in-state tuition eligibility on residence . . . and laws like New York's Tuition Laws that base eligibility on other criteria (such as high school attendance and graduation)," relying principally on *Martinez* and *Walz*. MTD at 19–20. Neither decision binds this Court: *Martinez* is a state supreme court decision construing a federal statute, and *Walz* is an out-of-circuit district court decision that was wrongly decided and is on appeal. To the extent they hold that a State escapes Section 1623(a) whenever some nonresidents can also qualify, they cannot be reconciled with the Fifth Circuit's holding that "Section 1623(a) does not limit its preemptive effect to state-law residency determinations based on a single factor." *Texas*, 181 F.4th at 557.

That the statutes in the decisions cited in the Complaint, Compl. ¶ 6, contained "explicit requirements that a student be a resident, or be deemed a resident of the State," MTD at 19; *see* MTD at 20–21, does not distinguish them. The question under Section 1623(a) is whether eligibility is conferred "on the basis of residence," not whether the word "residence" appears in the statute. *See United States v. Nebraska*, 835 F. Supp. 3d 962, 1000 (D. Neb. 2026) (consent judgment) (holding Nebraska's tuition statutes preempted because they allowed unlawfully-present aliens "to qualify as 'residents'"); *Kansas*, 2026 WL 2654069, at *1, *4–5 (holding preempted a statute that conferred in-state tuition "based on a state-defined residency checklist").

New York's statutes fare no better. Although they describe qualifying students as "not a resident of New York state," the State still anchors the benefit in the resident rate—

"a rate or charge no greater than that imposed for students who are residents of the state," N.Y. Educ. Law § 355(2)(h)(8)—and in the HESC awards that follow it. Extending the resident rate to such students does not convert the benefit into one that is not based on residence; it merely changes who receives the resident benefit. Defendants note that the Kansas court distinguished *Walz* because the Kansas statute "deemed" qualifying students residents, MTD at 21 n.9 (quoting Kan. Stat. Ann. § 76-731a(a) (2004)), but that elevates drafting form over substance: Section 1623(a) asks what the benefit is conferred "on the basis of," not what label the State attaches to the beneficiary.

Defendants suggest that decisions in cases where a State ultimately declined to defend should receive "minimal persuasive weight." MTD at 21 n.9. But the relevance of those decisions does not depend on the procedural mechanism through which they were resolved. The United States cites them for their analysis of materially similar state laws and Section 1623, and several involved adversarial briefing, intervention efforts, or substantive judicial analysis. Moreover, Defendants acknowledge that *Illinois* was fully defended by the State. MTD at 21 n.9.

The Court should likewise decline to follow the Eastern District of Virginia's recent decision in *United States v. Virginia*, No. 3:25-cv-01067-REP, ECF No. 122, 2026 WL 2984988 (E.D. Va. Oct. 5, 2026) ("*Virginia*"), which granted summary judgment to the Commonwealth. *Virginia* is not binding, was wrongly decided, and is distinguishable.

*First*, *Virginia* was decided on a stipulated summary judgment record, and its conclusion that the Commonwealth's "Tuition Equity Pathway" was "both under and overinclusive of Virginia residency" rested on stipulated facts about nonresidents and on

the pathway's requirement of two years of Virginia tax filings. *Virginia*, slip op. at 5–7, 10–11, 22–24. Here, the Court must accept the Complaint's well-pleaded allegations as true—including that New York conditions public high school attendance largely on residency, Compl. ¶ 37. Even the Virginia court acknowledged that the United States' argument that "high school attendance necessarily reflects a prior determination of residency at the K-12 level" was "not entirely incorrect." *Id.* at 24.

*Second*, *Virginia*'s core reasoning—that a benefit is not conferred "on the basis of residence" if some nonresidents can also qualify, *id.* at 23–26—is contrary to *Texas*. The Virginia court noted that the only argument made to the contrary in *Texas* "was that residence was not the sole basis for the in-state tuition determination" and that "[t]he Fifth Circuit rejected that argument." *Id.* at 26–27. That is the argument Defendants press here. And although the Virginia court held that the INA's definition of "residence" governs Section 1623(a), *id.* at 24–25, the Challenged Laws satisfy that definition too. *See supra* Part II.A.

*Third*, *Virginia*'s alternative holding that "a citizen or national" means "one or more but not all," *id.* at 28, is wrong for the reasons given in Part II.B and contrary to the decisions of the Fifth Circuit and the Southern District of Illinois, which the Virginia court acknowledged "adopted the position of the United States." *Id.* at 33 n.18. Its concern that the United States' reading would render the "unless" clause surplusage, *id.* at 29, is misplaced: the clause excuses a State that in fact makes the benefit available to citizens without regard to residence, and a State retains multiple choices in structuring its benefits. *See* Part III.B, *infra*.

*Fourth*, the *Virginia* court's separate holding that the Commonwealth's "Domicile Pathway" is not preempted, *id.* at 12–21, has no analog here, because the Challenged Laws expressly provide for the eligibility of students "without lawful immigration status." N.Y. Educ. Law § 355(2)(h)(8); MTD at 6. And the *Virginia* court did not reach the Commonwealth's commandeering argument, the counterpart of the one Defendants raise here. *Virginia*, slip op. at 36 n.20; *see* Part III, *infra*.

**III. Section 1623 Has Valid Preemptive Effect Against the Challenged Laws.**

Defendants erroneously contend that Section 1623(a) is "an affirmative prohibition on state legislative or executive officials" that regulates the States rather than private actors and therefore violates the Tenth Amendment's anticommandeering doctrine or, at a minimum, must be read narrowly to avoid "substantial constitutional concerns." MTD at 21–23. That argument fails on both the text and the doctrine it invokes.

**A. Section 1623 Regulates Private Actors.**

Section 1623 is a preemption statute. A preemptive law must (1) "represent the exercise of a power conferred on Congress by the Constitution," and (2) "be best read as one that regulates private actors." *Murphy*, 584 U.S. at 477. Defendants' argument is directed at the second requirement. They wrongly reason that, because the Complaint states that "a state may not offer in-state tuition (or 'resident tuition') benefits" to unlawfully present aliens on the basis of residence, Compl. ¶ 24, Section 1623 must be a directive to state officials. MTD at 22–23. But that sentence describes the ordinary operation of the Supremacy Clause, and the same paragraph describes the statute as a "[l]imitation on eligibility for preferential treatment of aliens not lawfully present." Compl. ¶ 24; *see also*

*id.* ¶ 26. Section 1623(a) speaks to the eligibility of individuals: an "alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit" unless "a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a). *See Illinois*, 2026 WL 2137256, at *7 ("[Section 1623] regulates the eligibility of individuals, specifically individuals who are not lawfully present. It does not dictate the content of state education policy or compel state officials to take any action.") (citation omitted). Indeed, the INA as a whole "certainly confers rights and places restrictions on large numbers of private persons." *New York v. U.S. Dep't of Just.*, 951 F.3d 84, 114 n.27 (2d Cir. 2020) (noting that district court's preemption analysis that focused on statutory language relating to government entities and officials in federal statute "may have been too narrow").

Defendants' own authority undercuts their framing. They assert that "[t]he requirement for purely private regulation is bedrock," MTD at 21, yet the sentence they quote from this District's decision in *United States v. New York*, 810 F. Supp. 3d 329, 340 (N.D.N.Y. 2025), recognizes that a federal law has preemptive effect "if it regulates private individuals, whether alone or in conjunction with regulation of States." MTD at 21. Section 1623 meets that test: even on Defendants' view that it also limits what a State may do, it has preemptive effect because it regulates the eligibility of private individuals.

Defendants' reliance on the dissent in *Texas* is misplaced. The dissent reasoned that because Section 1623(a) "is a limitation on illegal alien eligibility . . . itself," it "cannot operate as a regulation on individuals." MTD at 23 (quoting *Texas*, 181 F.4th at 573

(Ramirez, J., dissenting)). But a dissenting opinion is not binding precedent. See, e.g., *Munoz v. United States*, 2008 WL 2942861, at *34 n.35 (E.D.N.Y. July 28, 2008) ("Although Judge Friendly's dissenting opinion is not binding precedent ...."). The Fifth Circuit majority rejected that view, holding that Section 1623(a) "is ordinary pre-emption legislation that 'denies permission,' not a command to, or direct regulation of, the states," and "merely targets offending laws." *Texas*, 181 F.4th at 560 (citations omitted) (emphasis in original). The Southern District of Illinois likewise concluded that Section 1623(a) operates through ordinary preemption principles and therefore satisfies *Murphy*'s requirement that a preemption provision regulate private conduct rather than merely direct States to legislate in a particular way. See *Illinois*, 2026 WL 2137256, at *7–8. Defendants offer no reason to prefer the dissent's analysis over the reasoning adopted by the majority in *Texas* and by the court in *Illinois.*

Even if Section 1623 regulated those who determine eligibility, Defendants' Tenth Amendment defense would still fail. "Legislation that applies 'evenhandedly' to state and private actors does not typically implicate the Tenth Amendment." *Haaland v. Brackeen*, 599 U.S. 255, 283 (2023) (quoting *Murphy*, 584 U.S. at 476). Section 1623(a) governs eligibility for "any postsecondary education benefit," 8 U.S.C. § 1623(a), and providers of educational benefits routinely condition eligibility on state residence. *See, e.g.*, SUNY, *Excelsior Scholarship*, https://www.suny.edu/smarttrack/types-of-financial-aid/scholarships/excelsior/ [https://perma.cc/___] (last visited Nov. 9, 2026) (requiring that an applicant "be a resident of NYS and have resided in NYS for 12 continuous months

prior to the beginning of the term”). Section 1623 thus regulates all such parties equally, and the Tenth Amendment is not implicated.

And to the extent Defendants rely on *Murphy*, MTD at 21–23, that reliance is misplaced. Section 1623 is a textbook case of the ordinary, valid preemption that the Supreme Court described: “Congress enacts a law that imposes restrictions or confers rights on private actors”; “a state law confers rights or imposes restrictions that conflict with the federal law”; “and therefore the federal law takes precedence and the state law is preempted.” *Murphy*, 584 U.S. at 477. Defendants’ point that Section 1623 attaches no “penalty, tax, or other consequence” to a private individual, MTD at 23, misses that ineligibility is the consequence, and nothing in *Murphy* requires a penalty or tax.

**B. Section 1623 Does Not Violate the Anti-Commandeering Doctrine.**

Defendants’ claim that Section 1623 impermissibly compels the States to regulate according to Congress’s instructions fails because Section 1623 does not direct state legislatures, commandeer state employees, or require New York to expend any resources. It leaves the State a genuine choice in structuring its postsecondary education benefits, which is the hallmark of valid preemption, not unconstitutional commandeering. The Constitution commits the power over immigration to Congress and the Executive; it is not reserved to the States. *See* Background Part I, *supra*; *New York v. United States*, 505 U.S. 144, 156 (1992) (“If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States . . . .”). A State’s traditional role in education, MTD at 12–13, 22, does not displace that authority. *See* Part II.A, *supra*.

Defendants' reliance on the accountability concern identified in *New York*, 505 U.S. at 169, MTD at 22, is likewise misplaced. By its terms, the passage Defendants quote concerns "matters not pre-empted by federal regulation." *Id.* In *New York*, the federal scheme required the States either to take title to low-level radioactive waste or to regulate according to Congress's command. 505 U.S. at 176. Any federal law that preempts a state law necessarily has the practical effect of telling a State that it may not do something, but that is not a direct command to the States; it is the natural effect of the Supremacy Clause. *See South Carolina v. Baker*, 485 U.S. 505, 514–15 (1988); *City of New York v. United States*, 179 F.3d 29, 31, 35 (2d Cir. 1999) (rejecting a Tenth Amendment challenge to federal provisions that overrode a New York policy that "prohibit[ed] its employees from voluntarily providing federal immigration authorities with information concerning the immigration status of any alien").

Nor does *Printz v. United States*, 521 U.S. 898, 935 (1997), MTD at 21–22, help Defendants. *Printz* invalidated a federal law that required state actors "to perform discrete, ministerial tasks" and "examin[e] databases and records that only state officials have access to." MTD at 22 (quoting *Printz*, 521 U.S. at 930, 932 n.17). Section 1623 requires no state officer to perform a task or examine any record.

Defendants' contention that Section 1623, like the provisions in *Colorado v. U.S. Department of Justice*, issues "direct orders" to state officials even though it is "couched as prohibitions rather than affirmative commands," MTD at 22 (quoting *Colorado v. U.S. Dep't of Just.*, 455 F. Supp. 3d 1034, 1059 (D. Colo. 2020)); *see also id.* (citing *City of Evanston v. Barr*, 412 F. Supp. 3d 873 (N.D. Ill. 2019), and *City of Chicago v. Sessions*,

321 F. Supp. 3d 855 (N.D. Ill. 2018)), fails because Section 1623 gives States a choice. *See Illinois*, 2026 WL 2137256, at *7 ("Under the statute, a state retains multiple choices in structuring its postsecondary education benefits."). New York can eliminate the distinction between in-state and out-of-state tuition, make aliens who are not lawfully present ineligible for postsecondary education benefits altogether, or make such aliens eligible based on criteria other than high school attendance and graduation (such as merit or need). "Of course, which of these choices best serves [New York] remains a matter of policy well within the purview of the [New York] Legislature." *Id.* And none of the decisions Defendants cite concerned Section 1623.

Defendants also erroneously assert that the United States points to "no express language" showing that Congress meant to compel state legislative or executive action "given the substantial federalism interests at play." MTD at 23. But Section 1623 compels no state action, so the absence of such language is unsurprising. What the statute does say is explicit: it speaks directly to eligibility "on the basis of residence within a State." 8 U.S.C. § 1623(a). That text leaves no uncertainty about Congress's intent. *See Bond v. United States*, 572 U.S. 844, 858 (2014) (quoting *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991)) (courts must "be certain of Congress' intent before finding that federal law overrides" the "usual constitutional balance of federal and state powers").

Other courts have rejected Defendants' commandeering arguments. In *Illinois*, the court held that Section 1623 is "a valid preemption provision" because "[it] regulates the eligibility of private individuals for certain benefits in an area of federal authority. It does not commandeer state legislatures or officials." 2026 WL 2137256, at *8 (citing *Texas*,

181 F.4th at 559–60). The Fifth Circuit likewise rejected the argument that Section 1623 commandeers the States, *Texas*, 181 F.4th at 559–60, as did the District of Kansas. *Kansas*, 2026 WL 2654069, at *5 n.8. Section 1623 simply provides that if New York chooses to extend residency-based postsecondary education benefits to aliens who are not lawfully present, it must extend the same eligibility to U.S. citizens regardless of residence. *See Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585, 606 (E.D. Va. 2004).

To the extent Defendants invoke constitutional avoidance, the canon supports the United States. "[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988). The reading adopted in *Texas* and *Illinois*—that Section 1623 limits the eligibility of aliens who are not lawfully present and leaves the State free to choose how to structure its benefits—avoids any commandeering problem. Section 1623 does not run afoul of the Tenth Amendment or otherwise exceed Congress's constitutional authority.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to dismiss.

Date: November 12, 2026 Respectfully submitted,


| | |
|---|---|
| JOHN A. SARCONE III<br>First Assistant United States Attorney<br>Northern District of New York | JONATHAN D. GUYNN<br>Acting Assistant Attorney General<br>Civil Division<br><br>CODY M. POPLIN<br>Deputy Assistant Attorney General<br><br>HILARY K. PERKINS<br>Director<br><br>JACQUELINE COLEMAN SNEAD<br>Deputy Director<br><br>*s/ Evan Schanerberger*<br>Evan Schanerberger<br>Trial Attorney<br>NDNY Bar Roll # 708038<br>U.S. Department of Justice<br>Civil Division<br>Enforcement & Affirmative Litigation Branch<br>P.O. Box 386<br>Washington, DC 20044<br>(202) 253-9034<br>Evan.W.Schanerberger@usdoj.gov<br><br>*Attorneys for the United States* |